## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**TABITHA PARKER,** *on behalf of*
*herself and all others similarly situated,*

     **Plaintiff,**

**v.**                                **CASE NO.:**

**OSA CONSULTING GROUP, LLC,**
**FREEH GROUP INTERNATIONAL**
**SOLUTIONS, LLC, and**
**TRANS UNION, LLC,**

     **Defendants.**
_____/

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TABITHA PARKER, by and through undersigned counsel, and on behalf of herself, the Putative Classes set forth below, as well as in the public interest, brings the following Class Action as of right against Defendants OSA CONSULTING GROUP, LLC, FREEH GROUP INTERNATIONAL SOLUTIONS, LLC, and TRANS UNION, LLC under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x.

### I.     NATURE OF THE CASE

1.     This FCRA action arises out of Plaintiff's application for employment with non-party Stellar Partners. Stellar hired Defendants to perform a pre-employment background check on Plaintiff, the reporting of which information is subject to the FCRA's strictures. The FCRA imposes several important accuracy and transparency requirements on consumer reporting agencies ("CRAs") like Defendants, which are designed to protect consumers like Plaintiff.

2.     Defendant Osa is a limited liability entity that has its primary offices in Fort Lauderdale, Florida. It markets itself as "a risk management firm utilizing its expertise in the fields of fraud detection and prevention, business compliance, internal investigations, crisis management, and due diligence."[1] Defendant Freeh Group has multiple offices, and similarly claims it "is a global risk management firm serving in the areas of business integrity and compliance, safety and security, and investigations and due diligence."[2]

3.     Because Defendants Freeh and Osa sold Stellar consumer reports, they are obligated under the FCRA to employ reasonable procedures designed to ensure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

4.     The FCRA also imposes specific requirements when reports are, like here, issued for employment purposes. When furnishing employment-purposed reports and they contain information likely to adversely affect the subject consumer's ability to obtain employment, the CRA must either: (1) notify the consumer it is providing such report at the time it provides the report; or (2) have in place strict procedures designed to ensure the public-record information reported is complete and up-to-date. 15 U.S.C. § 1681k.

5.     Compliance with section 1681k is not optional, and comes into play whenever a CRA furnishes a consumer report for employment purposes.

6.     Apart from accuracy provisions that have genuine teeth, another of the FCRA's primary goals is transparency. Consumers have the absolute right to learn all of the

---

[1] https://osaconsultinggroup.com/ (last visited April 17, 2020).
[2] https://www.freehgroup.com/ (last visited April 17, 2020).

information—including sources of that information—CRAs possess about them. 15 U.S.C. § 1681g. All a consumer need do is contact the CRA and ask for his or her file disclosure. *Id.*

7.     Part of both the accuracy and transparency provisions is the FCRA's robust dispute and reinvestigation requirements. A CRA is duty bound to conduct a reasonable investigation of a consumer's dispute of information appearing on a consumer report or in a file disclosure. 15 U.S.C. § 1681i.

8.     In Plaintiff's circumstances, Defendants Freeh and Osa failed on all of these counts. They created a consumer report about Plaintiff for Stellar that was rife with errors, both inaccurately attributing to her criminal history that was not hers, and failing to update other items of criminal history to their most-recent statuses. And neither provided Plaintiff at-the-time notice that they were furnishing the report to Stellar.

9.     When Plaintiff sought to dispute the inaccuracies, Defendants Freeh and Osa would do nothing for her. They directed her to take the problems up with Stellar, and would not provide her with a copy of the report they furnished to Stellar.

10.     Without the ability to reasonably dispute the inaccuracies with Defendants Freeh and Osa, Plaintiff wrote to Defendants twice and requested her file disclosure. Neither Defendant responded to either request.

11.     Put simply, Defendants Freeh and Osa operate in exactly the opposite way Congress envisioned with it enacted the FCRA. Rather than employing systems to accurately report information, appropriately notifying consumers when reporting derogatory information about them, and providing the transparency of allowing consumers to learn all the information CRAs possess and trade about them, Defendants Freeh and Osa work in secret, keeping all

information to themselves, and outright refuse to own up to their mistakes and make them right. Lawsuits like this one are therefore the only relief for consumers like Plaintiff.

12.     The report Defendants Freeh and Osa sold to Stellar about Plaintiff included information obtained from Defendant TransUnion. Because Defendants Freeh and Osa failed to provide Plaintiff with her full file disclosure, Plaintiff was unable to learn about TransUnion's true role in the process.

13.     And despite providing consumer reports for employment purposes to Defendants Freeh and Osa, TransUnion did not provide Plaintiff with at-the-time notice it was doing so. Because the information TransUnion reported to Defendants Freeh and Osa was not complete and up-to-date, TransUnion violated both subsections of 15 U.S.C. § 1681k.

14.     Plaintiff brings an individual claim against Defendants for their violations of 15 U.S.C. § 1681e(b). Defendants produced inaccurate reports about Plaintiff without having reasonable procedures designed to ensure the maximum possible accuracy of the information they reported to Stellar.

15.     Plaintiff also brings an individual claim under 15 U.S.C. § 1681i against Defendants Freeh and Osa because when she contacted them to dispute the contents of her report, they were required to reasonably investigate her dispute. Defendants Freeh and Osa instead did nothing.

16.     Plaintiff brings a nationwide class claim against Defendants under 15 U.S.C. § 1681k. At the time Defendants created and provided the report about Plaintiff to Stellar, they neither had in place strict procedures designed to ensure the public-record information they

reported was complete and up-to-date. Likewise, Defendants did not provide Plaintiff with notice they were reporting such information at the time they did so.

17.    Plaintiff also brings a nationwide class claim against Defendants Freeh and Osa for violations of 15 U.S.C. § 1681g. When a consumer contacts a CRA and requests his or her full file disclosure, the CRA must comply and provide all information, including the sources of that information. Again, when Plaintiff wrote to Defendants to exercise this right, Defendants gave her nothing.

## II.    JURISDICTION AND VENUE

18.    The Court has subject-matter jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

19.    Venue is proper in this Court, because all of the events giving rise to Plaintiff's claims took place in this District and Division. Plaintiff applied for employment here, and Defendants failed in their FCRA duties here.

## III.    PARTIES

20.    Plaintiff is a "consumer" as protected and governed by the FCRA.

21.    Defendant Osa Consulting is a limited liability entity organized in and existing under the laws of the State of Florida with its principal place of business located in Fort Lauderdale, Florida, which markets and performs its services throughout the United States, including within this District.

22.    Defendant Osa is a consumer reporting agency as defined and governed by the FCRA.

23.    Defendant Freeh Group is a limited liability entity with corporate offices in

Delaware, Florida, New York, and Washington, D.C., which markets and performs its services throughout the United States, including within this District.

24.     Defendant Freeh Group is a consumer reporting agency as defined and governed by the FCRA.

25.     Defendant TransUnion a limited liability entity with its principal place of business in Illinois, which markets and performs its services throughout the United States, including within this District.

26.     Defendant TransUnion is a consumer reporting agency as defined and governed by the FCRA.

27.     Non-party Stellar was a "user" of consumer reports as defined and governed by the FCRA.

## IV.     FACTUAL ALLEGATIONS

**A.     Plaintiff's Application For Employment.**

28.     On or around August 9, 2019, Plaintiff sought employment with Stellar.

29.     Plaintiff interviewed with Stellar on August 9, 2019, who offered her a position conditioned on her passing a background check on or around August 13, 2019.

30.     On or around August 13, 2019, Plaintiff completed Stellar paperwork including documents purporting to authorize Stellar to procure a consumer report on Plaintiff from Defendants Freeh and Osa for employment purposes.

31.     Stellar then advised Plaintiff that her start date would be delayed because Stellar had not yet received the results of her background check from Defendants Freeh and Osa.

32.    On August 22, 2019, Plaintiff received an email from Stellar indicating that "due, in part, to the contents of this consumer report, a decision is pending regarding your application for employment . . . . You have the right to dispute the accuracy of the information in this report by contacting the consumer reporting agency listed below directly."

33.    This email did not include the complete report on which Stellar based its decision to delay Plaintiff's employment.

34.    Plaintiff likewise did not receive notice from Defendants that they were furnishing a consumer report for employment purposes that contained potentially harmful information.

35.    Plaintiff later received a letter dated August 22, 2019 from Stellar stating that if she wished to dispute the accuracy of the information in the report she was to contact Defendant Freeh Group. While that letter, which is commonly known as a "pre-adverse-action notice," is by law required to contain the entire report on which Stellar is basing its hiring decision, the letter did not. It included only the first four pages of the report.

36.    Many entries from the report communicated in the email from Stellar, including allegations of theft, were inaccurate or simply did not belong to Plaintiff.

37.    Plaintiff attempted to reach Defendant Freeh Group and was instead connected to Osa Consulting, and in fact spoke with John Osa, who informed Plaintiff she had no right to dispute the report and refused Plaintiff's attempts to dispute the inaccuracies.

38.    More specifically, on August 23, 2019 Plaintiff called the phone number provided for Defendant Freeh Group on the report and is directly connected to Mr. Osa, who

answered the phone and identified that he works for Defendant "Osa Consulting," not Defendant Freeh Group.

39.     Plaintiff asked Mr. Osa about the erroneous report and is advised that any questions about the report must be directed by Plaintiff to Stellar Partners directly. She also asked for a full copy of her report to Stellar, which Mr. Osa refused to provide.

40.     Mr. Osa further advised Plaintiff that he is an ex-FBI agent and has access to all her information and provided the requested information to Stellar.

41.     During the call Plaintiff explained to Mr. Osa that her report is on Osa's letterhead and, further, that under the FCRA she is entitled to dispute the information being reported because it was incorrect.

42.     In response, Mr. Osa merely informed Plaintiff states that it is "not his problem" that she is a "bad apple" and to take it up with Stellar Partners. Mr. Osa then hung up on Plaintiff.

43.     Plaintiff attempted to call back but is sent directly to voicemail.

44.     Plaintiff attempted to call Defendants Osa Consulting/Freeh Group back the next day, August 24, 2019, but was ignored.

45.     Discovery will show that Defendants Osa and Freeh operate as a single, unified consumer reporting agency when creating consumer reports for employment purposes like the ones at issue here.

46.     It is for this reason that applicants are told that they can contact Freeh regarding their consumer reports, yet when applicants call the number for Freeh they are provided, Mr. Osa answers.

47.     Plaintiff then informed Christine Suhs, an employee of Stellar, that Defendants Freeh and Osa refused to speak with her or provide her with a copy of her report.

48.     On around August 26, 2019, Stellar's Ms. Suhs informed Plaintiff that she must contact TransUnion, whom Ms. Suhs then stated supplied the information contained in the report, in order to dispute the report. Ms. Suhs also incorrectly informed Plaintiff that she must dispute each alleged arrest by contacting the arresting agencies directly.

49.     On around August 26, 2019, Plaintiff finally received from Stellar a hard copy of the complete thirty-two-page report. This of course occurred long after Stellar's decision to delay Plaintiff's employment, and after she contacted Defendants Freeh and Osa trying to dispute the contents.

50.     The report is rife with inaccuracies and errors. In fact, many of the entries in the report, including allegations of theft, simply do not belong to Plaintiff.

51.     By way of example, the report states that on August 11, 2007 Ms. Parker was charged with a "Misdemeanor for Retail Theft," found guilty, and sentenced to 15 days in the county jail. But Plaintiff has never been arrested for theft, never been convicted of a crime, nor has she ever been to jail.

52.     Worse still, the report erroneously alleges Plaintiff was charged with the second-degree felony for aggravated battery on a pregnant female in Hillsborough County, Florida, and even includes a mugshot. But Plaintiff has never been charged with a felony ***and the photograph in the mugshot is not Plaintiff***, but another person entirely.

53.     The report is full of similar errors wrongly attributing to Plaintiff crimes she simply did not commit, including an additional felony charge for passing altered or forged

instruments and larceny, an erroneous charge for misdemeanor larceny, and another misdemeanor charge for allegedly violating a pre-trial release. Simply put, these criminal charges belonged to someone else and they were costing Plaintiff her job with Stellar.

54.    On around August 27, 2019, Plaintiff again attempted to reach the CRA listed on the report, Osa, through John Osa, but Osa refused to cooperate and reinvestigate Plaintiff's dispute of the inaccuracies in the report.

55.    Plaintiff informed a different Stellar individual that the CRA would not allow her to dispute the report, that the background check does not match her background, and that individual instructed Plaintiff to again contact Ms. Suhs.

56.    On around August 28, 2019, Ms. Suhs again instructed Plaintiff to dispute the report with TransUnion and the arresting agencies and not with Freeh Group or Osa. Plaintiff requested—in writing—from Defendants Freeh and Osa her full file as permitted the FCRA but, after multiple requests, is provided just the thirty-two page report Osa provided to Stellar.

57.    Sometime thereafter, Plaintiff received a Final Notice of Adverse Action letter dated September 4, 2019 and stating that, in part due to the information on the background check Stellar received, Stellar would not hire Plaintiff.

58.    That letter stated that Stellar received the report on which it was relying to deny Plaintiff employment was created by Freeh.

59.    Plaintiff therefore lost her job, but this notice came long after Stellar improperly delayed Plaintiff's employment based on the contents of a consumer report Plaintiff had not seen.

60. Discovery will show that part of the report Defendants Freeh and Osa provided to Stellar, under the heading "Comprehensive Report," is a report purchased from TransUnion that Defendants Freeh and Osa merely repackage and sell as their own.

61. Regardless of what Freeh and Osa do with the information TransUnion provides, TransUnion is obligated under the FCRA to provide accurate information to resellers like Freeh and Osa in the first instance.

62. Defendants Freeh and Osa, for their part, also have an obligation to employ reasonable procedures to ensure maximum possible accuracy of the information TransUnion provides them before they include it in their own reports. Yet, they failed to meet these requirements.

63. TransUnion likewise did not meet its accuracy obligations, providing Freeh and Osa with a report containing the errors and inaccuracies described above.

**B.    Defendants' Practices And Policies For Notice, File Disclosures, and Investigations.**

64. Defendants Freeh and Osa have created and implemented national, reporting policies, procedures, and practices under which they operate. Those policies, procedures, and practices cover the creation and sale of "background checks" or "consumer reports" to employers like Stellar.

65. Defendants Freeh and Osa's policies and procedures flaunt the FCRA at nearly every turn. As shown by Plaintiff's experience, Freeh and Osa provide reports to employers as a key aspect of their businesses, yet fail on even the most easy-to-follow FCRA requirements like the provision of file disclosures. Defendants Freeh and Osa likewise fail to meet the

FCRA's accuracy provisions as a matter of course, as their procedures were unable to, for example, know that an individual pictured in one of the criminal files they attributed to Plaintiff was not Plaintiff.

66.     These Defendants, along with TransUnion, likewise have no strict procedures in place designed to ensure the public-record information they report in the employment context is complete and up-to-date. As Plaintiff's case again demonstrates, Defendants reported to Stellar that Plaintiff had multiple criminal charges that did not belong to her. Had Defendants reported information that was complete and up-to-date, Plaintiff's report would have none of this criminal history in it.

67.     Defendants will therefore be unable to rely on the strict procedures aspect of Section 1681k(a) for meeting the requirements of that portion of the FCRA.

68.     Likewise, as Plaintiff's case again demonstrates, Defendants have no process in place to provide at-the-time notice when they report derogatory information for employment purposes.

69.     For TransUnion's part, it turned over derogatory information to Freeh and Osa to be used in a consumer report for employment purposes, yet did not send Plaintiff a notice at the time it did so.

70.     And, separately, TransUnion did not have in place reasonable procedures designed to assure the maximum possible accuracy of the information it reported to Freeh and Osa.

71.     When they repackaged the TransUnion information and provided it to Stellar, Freeh and Osa failed in their separate obligation to provide Plaintiff with at-the-time notice.

72.     As a matter of practice, Defendants Freeh and Osa refuse to investigate the disputes of consumers like Plaintiff. Freeh and Osa instead instruct consumers to take their disputes to the potential employers, which is not an appropriate response under the FCRA to a consumer dispute.

73.     Similarly, also as a matter of course, Freeh and Osa refuse to provide consumers with their file disclosures on request. Such refusal is born entirely from laziness or cost-cutting, as CRAs make no money compiling file disclosures and incurring the expense of sending them to consumers. Understanding that it is easier and cheaper to just ignore consumers' request for their file disclosures, Freeh and Osa do just that.

74.     None of this is by accident. The FCRA's notice and file-disclosure requirements are simple and easy to follow. But since they cost money for CRAs to follow them, Defendants Freeh and Osa have chosen the more profit-friendly option of doing nothing.

75.     Defendants have created uniform, consistently applied processes to utterly avoid all of these FCRA-imposed obligations.

76.     As a result of these FCRA violations, Defendants are liable to Plaintiff, and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

77.     Defendants' conduct and omissions were willful. Because the FCRA was enacted in 1970, Defendants has had years to become compliant but has failed to do so.

78.     And because Defendants are CRAs and operate under the FCRA's umbrella every day, discovery will show they are aware of the FCRA's obligations and ignore them.

79.     Defendants, operating as nationwide CRAs, are aware of their FCRA obligations because they market themselves to employers like Stellar as invaluable parts of their hiring processes. Defendants Freeh and Osa are owned and operated by lawyers, former federal judges, and former FBI agents, so they possess the know-how and resources to learn of the legal obligations for background reporting agencies.

80.     All Defendants have access to in-house and outside counsel, meaning they have ample means and opportunity to seek legal advice regarding their FCRA responsiblities. Defendants therefore knew of the requirements imposed by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

## V.     LEGAL REQUIREMENTS

### The FCRA's Transparency Requirements

81.     Chief among the FCRA's broad protections are those that permit consumers to learn the information CRAs traffic about them.

82.     The Act therefore requires CRAs to provide, at consumers' request, all information in the consumer's file at the time of the request, including sources of that information, that CRAs possess about the requesting consumer. 15 U.S.C. § 1681g(a). This information is commonly called the consumer's "full file disclosure."

83.     It is insufficient to simply provide the consumer with a report the CRA gave to a third party. *See id.*

84.     Notably, there is nothing in the statute that permits a CRA to avoid this duty of full disclosure.

14

85.    Such a provision was enacted for precisely situations like Plaintiff's. Defendants exchanged inaccurate information about her and provided that information to a potential employer. For Plaintiff to correct those inaccuracies, she has to know the sources involved so she can contact them and have their records revised. If she does not know all the players who had a hand in furnishing information that went into her report, she cannot be certain that she has prevented the inaccuracies from resurfacing on the next report the Defendants, or someone else, create about her.

86.    When Plaintiff contacted Freeh and Osa and requested her full file disclosure, they did not provide it. Instead, all she received was the report provided to Stellar, which does not tell her where the information she received actually came from.

87.    While Defendants will likely claim that the report to Stellar does contain the sources of information, courts for example, it is widely known that CRAs buy bulk criminal-history information from third parties who are not courts.

88.    Without knowing who these third-party vendors are, Plaintiff and other consumers are powerless to correct inaccurate information they may possess and pass-on to others like Freeh, Osa, and TransUnion.

### *Maximum Possible Accuracy*

89.    The FCRA imposes on CRAs the requirement that, for every report they create, the employ reasonable procedures designed to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

90.     Such duty accompanies any report governed by the FCRA, and evinces Congress's intent that CRAs carefully carry-out their businesses such that their reports are as correct as possible.

91.     This accuracy provision applies in every context in which consumer reports are exchanged, meaning it is not limited to solely reports that are issued for employment purposes like some of the other provisions at issue here.

92.     Defendants here fell short of those duties, as their procedures unreasonably failed to parse the information they possessed to ensure that they reported records attributable to Plaintiff and excluding records belonging to others.

93.     Discovery will show, for example, that original court records contained the date of birth of the individual to whom the inaccurate criminal records Defendants attributed to Plaintiff truly belong, yet Defendants instead relied on incomplete criminal records obtained from an unknown third party.

94.     Had Defendants consulted the original court records, they could have used the complete date of birth those records contained to exclude records not belonging to Plaintiff.

95.     As another example, some of the records contained a mugshot of the criminal defendant. Had Defendants implemented a system to compare such mugshot with a picture of Plaintiff, they would have known immediately that those records belonged to someone else.

96.     Defendants' failures on at least these two points show their procedures for compiling the records and reporting them to Stellar were unreasonable and error-prone.

97.     Discovery will show Defendants adopted these inadequate procedures solely for profits' sake, and it is more costly to obtain original court records or compare photographs.

Defendants prefer the error-prone methods they use because they are cheaper and allow for greater profit per report.

### *The Requirement for Investigation of Disputes*

98.     Part and parcel of the transparency requirement is that CRAs like Defendants Freeh and Osa take disputes seriously and work to correct inaccuracies consumers identify in those disputes.

99.     Congress codified its expectations in this regard, requiring in the FCRA that CRAs investigate disputes, and delete any information they find to be inaccurate, incomplete, or unverifiable. 15 U.S.C. § 1681i(a)(1), (5).

100.    Freeh and Osa do not even give lip service to this requirement, as Freeh appears to have no ability to allow consumers to lodge a dispute. As Plaintiff was not able to even contact Freeh when she called the number Stellar provided her, it then follows that Freeh did not conduct any investigation of her dispute.

101.     Osa, on the other hand, outright ignores disputes and refuses to do anything. As Plaintiff's circumstances confirm, Osa keeps all of the information it possesses secret, and refuses to engage in any investigation of disputes whatsoever. Such is the antithesis of the FCRA's requirement that CRAs actually investigate disputes.

### *The Notice Requirement in the Employment Context*

102.    15 U.S.C. § 1681k(a) requires CRAs like Freeh, Osa, and TransUnion to provide timely and lawful notice that they are furnishing an employment purposed consumer report that contains derogatory information at the time they did so.

103.    This important requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the consumer-reporting agency to obtain and, as appropriate, correct information in the furnished report. It also was intended to alert the consumer to the employer's use of the report to provide consumers the opportunity to address any concerns or derogatory history in the report directly with the employer.

104.    Though three CRAs were involved in the creation and provision of the report about Plaintiff to Stellar, and that report contained numerous entries of negative criminal history that would likely adversely affect Plaintiff's ability to be employed by Stellar, Plaintiff never received any notice from the Defendants that they were furnishing such report.

105.    Plaintiff alleges that Defendants did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2). The alternative would only be applicable if Defendants had in place before any report was furnished strict procedures designed to ensure that it actually contacted the original source of public records information (*e.g.*, the Court clerk or the DMV) before furnishing a report which includes such information to insure that the information it included in its reports was the complete and up-to-date public record. A § 1681k(a)(2) option is not available to Defendants because the public records they furnish to third parties are summaries, indexes, or partial records. They never furnished the complete and up-to-date public record as Section 1681k(a)(2) envisions. That Section is thus inapplicable to the consumer reports at issue in this case.

## VI.     DEFENDANTS ACTED WILLFULLY

106.    Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau. Defendants obtained or had available substantial written materials, which apprised them of their duties under the FCRA.

107.    Defendants' willful conduct is further reflected by, among other things, the following facts:

     a.     Defendants provided no notice to Plaintiff that they were providing to Stellar a consumer report that contained negative criminal history at the time they did so (or at all, for that matter). This failure was either knowing or reckless;

     b.     Defendants Freeh and Osa took no steps in response to Plaintiff's dispute of the inaccuracies in her Stellar report. In Freeh's case, it does not even seem to have in place a system by which consumers may dispute reports. Such failures are at least reckless, if not knowing;

     c.     Defendants do not have in place reasonable procedures designed to assure the maximum possible accuracy of information they report. As with Plaintiff, a criminal record Defendants stated belonged to her included a picture of an individual that was not Plaintiff. A reasonable procedure would have accounted for the presence of the picture, and would have allowed a comparison of the picture in the court records with one of Plaintiff. Such failures are at least reckless, if not knowing;

     d.     Defendants Freeh and Osa do not provide file disclosures. Turning over to a consumer the same report that a CRA has given an employer is not the same thing as providing "[a]ll information in the consumer's file at the time of the request," as well as "[t]he sources of the information." 15 U.S.C. § 1681g(a)(1), (2). This is one of the simplest FCRA requirements to follow, as all it demands is that a CRA give consumers everything in their possession and tell consumers where they got it. Such failures are at least reckless, if not knowing;

e.    Defendants Freeh and Osa likewise to not investigate disputes. Since Plaintiff called the telephone number for Freeh and was instead connected to Osa, Freeh appears to rely on Osa to conduct its dispute investigations. Osa did nothing with Plaintiff's dispute, telling her instead to take-up the inaccuracies with Stellar. Again, this failure runs afoul of one of the FCRA's easiest-to-follow provisions, making the failure knowing and therefore willful;

f.    The FCRA was enacted in 1970, giving Defendants 50 years to become compliant;

g.    Defendants are companies with access to legal advice through their own general counsel's office and/or outside litigation counsel. Indeed, Freeh's marquee principle is a former federal judge, and Mr. Osa is a former FBI agent. Yet, there is no contemporaneous evidence that they determined that their conduct was lawful;

h.    Defendants knew or had reason to know that their conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

i.    Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

j.    Defendants' violations of the FCRA were repeated and systematic, and they were carried out not by accident or oversight, but exactly as Defendants intended.

108.    As a result of these FCRA violations, Defendants are liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

109.    For Plaintiff's individual claims, Defendants are liable for Plaintiff's actual damages pursuant to 15 U.S.C. § 1681o, plus punitive damages pursuant to 15 U.S.C. §

1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

## VII.    CLASS ACTION ALLEGATIONS

### FILE DISCLOSURE CLASS – VIOLATION OF THE FCRA § 1681g

110.    Plaintiff restates each of the allegations in Paragraphs 1–8, 37–44, 57, 65–66, 73–88, and 105–08 as if set forth at length herein.

111.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "File Disclosure Class"), of which she is a member:

> **All consumers in the United States who requested their consumer file disclosures from Freeh or Osa within the period five years before the filing of this lawsuit through the date on which the Court certifies a class in this action.**

### DISPUTE INVESTIGATION CLASS – VIOLATION OF THE FCRA § 1681i

112.    Plaintiff restates each of the allegations in Paragraphs 1–7, 9–11, 15, 37–44, 55, 65–66, 73–88, 97–100, and 105–08 as if set forth at length herein.

113.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "Dispute Investigation Class"), of which she is a member:

> **All consumers in the United States who contacted Freeh or Osa and disputed information in their consumer reports.**

### 1681k NOTICE CLASS – VIOLATION OF THE FCRA § 1681k(a)

114.    Plaintiff restates each of the allegations in Paragraphs 1–5, 8, 13, 28–34, 65–71, 77–80, 101–08 as if set forth at length herein.

115.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for herself and on behalf of the following putative class (the "1681k Notice Class"), of which she is a member:

> **All consumers in the United States (1) for whom Defendants created consumer reports for employment purposes, (2) which reports contained public-record information likely to have an adverse effect on those individuals' employment prospects, and (3) to whom Defendants did not provide to those consumers contemporaneous notice that they were providing such reports.**

116.     **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. Based on information and belief, the Classes are comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by Defendants, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

117.     **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Classes. The total focus of the litigation will be Defendants' uniform conduct and procedures; whether Defendants provided the required notices and disclosures, and investigated disputes; when it did so, if at all; and, whether Defendants acted willfully in their failure to design and implement procedures to assure compliance with the FCRA provisions at issue. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Classes.

118.     **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendants use common practices and automated systems in committing

the conduct that Plaintiff alleges damaged her and the Classes. Plaintiff seeks only statutory and punitive damages for her classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Classes. Defendants uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Classes.

119.    **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained Counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country, including repeatedly in this District and Division.

120.    **Superiority.** Questions of law and fact common to the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of Defendants to give Class Members the proper disclosure and notice. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

121.    Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

122.    There are no known unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions. Because Class Members in each Class that Plaintiff seeks to represent may be unaware that their rights have been violated or, if aware, would be unable to litigate their claims on an individual basis because of their relatively small damages, a class action is the only practical proceeding available.  To Plaintiff's knowledge, no other similar actions are pending against Defendants. This forum is appropriate for litigation because Defendants conduct business in this District and the conduct complained-of herein occurred here.

## VIII.   CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681g BY FREEH AND OSA
### Class Claim

123.    Freeh and Osa's failure to provide members of the File Disclosure Class with their full consumer files upon request violated 15 U.S.C. § 1681g(a).

124.    Freeh and Osa failed to produce the information they possessed, despite each consumer's valid request for a copy of their file pursuant to § 1681g(a). Freeh and Osa also failed to provide Plaintiff notice of her rights under the FCRA, as required by § 1681g(c)(2).

125.    The conduct, action, and inaction of Freeh and Osa were willful, rendering them liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Freeh and Osa acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other File Disclosure Class Members under 15 U.S.C. § 1681g.

126.    As a result of Freeh and Osa's conduct, Plaintiff has suffered particularized and concrete injuries, including being robbed of her congressionally mandated right to information to which Congress has deemed her entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parties with who Plaintiffs have no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiff is applying for employment or credit without Plaintiff having the opportunity to view it in advance, (4) it is potentially determinative information in extremely important interactions—applications for employment or credit, and (5) Freeh and Osa should include a notice of consumers' substantive rights under applicable federal law.

127.    Having been denied this important information, Plaintiff was harmed because she did not know what information was circulated about her and was subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiff was at increased risk to be denied employment.

128.    Freeh and Osa knew or should have known of their legal obligations under the FCRA. These obligations are well-established in the plain language of the statute and published circuit court authority. Freeh and Osa obtained or otherwise had available substantial written

materials that apprised Freeh and Osa of their duties under the FCRA. Any reasonable CRA knows of the existence of these FCRA mandates, or can easily discover their substance.

129.    Moreover, at the time Freeh and Osa failed to follow 15 U.S.C. § 1681g, a plethora of FTC opinions and case law advising how Freeh and Osa should conduct themselves existed.

130.    Plaintiff is entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Freeh and Osa in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

131.    As a result of these FCRA violations, Freeh and Osa are liable to Plaintiff for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

## COUNT TWO: VIOLATIONS OF 15 U.S.C. § 1681i BY FREEH AND OSA
<u>Class Claim</u>

132.    Freeh and Osa's failure or refusal to investigate disputes of Plaintiff and members of the Dispute Investigation Class violated 15 U.S.C. § 1681i.

133.    The FCRA imbues consumers with the absolute right to dispute inaccurate information in reports CRAs create. Such right is one of the most-fundamental the FCRA provides, with the aim being to permit consumers a role in ensuring that accurate information is reported about them

134.    Freeh and Osa robbed Plaintiff and Dispute Investigation Class of their statutory right to dispute inaccurate information those entities were reporting about them.

Plaintiff and Class Members therefore suffered a concrete, in-fact injury—they sought to dispute inaccuracies with Freeh and Osa, and Freeh and Osa refused them that right.

135.    The conduct, action, and inaction of Freeh and Osa was willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A).  Defendants knew or should have known of its legal obligations under the FCRA.  These obligations are well established in the plain language of the statute and published circuit court authority. Freeh and Osa obtained or otherwise had available substantial written materials that apprised Defendants of their duties under the FCRA.  Any reasonable CRA knows of the existence of these FCRA mandates, or can easily discover their substance.

136.    Moreover, at the time Freeh and Osa failed to follow 15 U.S.C. § 16811 a plethora of FTC opinions and case law existed.

## COUNT THREE: VIOLATIONS OF 15 U.S.C. § 1681k(a)(1) BY ALL DEFENDANTS
### Class Claim

137.    Defendants failed to send the required § 1681k(a)(1) notice to Plaintiff and each member of the 1681k Notice Class at the time that they provided an employment-purposed consumer report to  a user that contained public record information of the type that is likely to have an adverse effect on a consumer's ability to obtain or maintain employment.

138.    Defendants do not ever maintain strict procedures designed to ensure that they only furnish complete and up-to-date public records. In fact, they uniformly fail to sell or furnish the complete public record and instead only obtain and provide the very limited data available through a batch and/or automated pickup of public records.

139.     Defendants' failure to timely provide the required FCRA notices to Plaintiff and the putative 1681k Notice Class members violated 15 U.S.C. § 1681k(a)(1).

140.     Defendants' similar failure to maintain strict procedures designed to ensure that it did not furnish incomplete or out of date public records regarding Plaintiff and the putative class members violated 15 U.S.C. § 1681k(a)(2).

141.     The conduct, action, and inaction of Defendants were willful, rendering Defendants liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

142.     As a result of Defendants' conduct, Plaintiff and the putative class have suffered particularized and concrete injuries, including being robbed of their congressionally mandated right to information to which Congress has deemed them entitled. Access to this information is important because (1) it is highly personal in nature, (2) it is maintained and reported by third parts with whom Plaintiff has no pre-existing relationship, (3) it is ultimately sold to third parties to whom Plaintiff is applying to employment or credit without Plaintiff having the opportunity to view it in advance, and (4) it is potential determinative information in extremely important interactions—applications for employment or credit.

143.     Having been denied this important information, Plaintiff and the putative class were harmed because they did not know what information was circulated about them and by whom and were subsequently denied an opportunity to correct inaccurate or obsolete information. As a result, Plaintiff was at increased risk to be denied employment.

144.    Plaintiff and other members of the 1681k Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

145.    As a result of these FCRA violations, Defendants are liable to Plaintiff and to each Class Member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and for attorneys' fees and costs pursuant to § 1681n.

146.    As a result of Defendants' forgoing actions Plaintiff suffered concrete economic injuries when she lost a job opportunity and income.

## COUNT FOUR: VIOLATIONS OF 15 U.S.C. § 1681e(b) BY ALL DEFENDANTS
### Individual Claim

147.    Defendants violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and credit files they published and maintained regarding Plaintiff by erroneously listing multiple criminal charges that belonged to someone else or were otherwise inaccurate in terms of their outcomes.

148.    As a result of Defendants' conduct, Plaintiff suffered actual damages such as lost wages, frustration, stress, mental distress, loss of sleep, and lost time attempting to correct the inaccuracies.

149.    Defendants' violation of 15 U.S.C. § 1681e(b) were willful, rendering them liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

150.    Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## IX.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Classes pray for relief as follows:

a) That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her Counsel to represent the Classes;

b) That judgment be entered for the proposed Class against Defendants Freeh and Osa for statutory damages and punitive damages for violations of 15 U.S.C. § 1681g, pursuant to 15 U.S.C. § 1681n;

c) That judgment be entered for the proposed Class against Defendants Freeh and Osa for statutory damages and punitive damages for violations of 15 U.S.C. § 1681i, pursuant to 15 U.S.C. § 1681n;

d) That judgment be entered for the proposed Class against all Defendants for statutory damages and punitive damages for violations of 15 U.S.C. § 1681k(a)(1), pursuant to 15 U.S.C. § 1681n;

e) That judgment be entered for Plaintiff individually for her actual damages as well as punitive damages for Defendants' violations of 15 U.S.C. § 1681e(b);

f) That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o;

g) That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief, that may be permitted.

**A TRIAL BY JURY IS DEMANDED.**

Dated this 5th day of June, 2020.

Respectfully submitted,

**BRANDON HILL**
Florida Bar No. 37061
**LUIS A. CABASSA**
Florida Bar No. 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, FL 33602
Telephone: 813-224-0431
Facsimile: 813-229-8719
Email: bhill@wfclaw.com
Email: gnichols@wfclaw.com

**CRAIG C. MARCHIANDO**
Florida Bar No. 1010769
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel. – (757) 930-3660
Fax – (757) 930-3662
Email: craig@clalegal.com

*Attorneys for Plaintiff*